UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

JANICE A. CARRASCO,

                        Plaintiff,

      -against-

JAMES S. SUNWOO, DDS,

                        Defendant.
----------------------------------------------------------------X

**OPINION AND ORDER**

16 Civ. 530 (JCM)

In this diversity action, Plaintiff Janice A. Carrasco asserts a dental malpractice claim pursuant to New York common law against Defendant James S. Sunwoo, DDS. Plaintiff alleges that Defendant extracted her tooth in a negligent manner, causing her to suffer nerve damage. (Docket No. 1). Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket No. 42). Plaintiff has opposed Defendant's motion. (Docket No. 48). For the reasons set forth below, the Court denies Defendant's motion.[1]

**I. BACKGROUND**

**A. The Extraction**

Defendant is a dentist, board-certified oral and maxillofacial surgeon and medical doctor licensed by the State of New York and the State of California. (Def.'s 56.1 Statement[2] ¶ 1; Pl.'s 56.1 Response[3] ¶ 1). After being referred by another dentist, Plaintiff saw Defendant on April 5, 2015, to have her tooth number 19 extracted. (Def.'s 56.1 Statement ¶ 5; Pl.'s 56.1 Response

---

[1] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 11).

[2] Refers to Defendant's "Amended Statement of Material Facts Pursuant to Local Civil Rule 56.1," filed on December 15, 2017. (Docket No. 44 at 3–8).

[3] Refers to "Plaintiff's Response to Statement of Material Facts Pursuant to FRCP Rule 56 and Local Civil Rule 56.1(b)," filed on December 22, 2017. (Docket No. 49).

1

¶ 5). Plaintiff reviewed and signed a consent form explaining certain risks associated with the recommended extraction, including possible nerve involvement resulting in temporary or permanent numbness. (Def.'s 56.1 Statement ¶ 6; Pl.'s 56.1 Response ¶ 6; Docket No. 42-3 at 11–12). Thereafter, Defendant extracted Plaintiff's tooth number 19. (Docket No. 1 ¶ 6; Docket No. 2 ¶ 6).

The record before the Court includes a transcript of Plaintiff's deposition testimony, (Docket No. 42-8 ("Pl.'s Depo. Tr.")), as well as Plaintiff's sworn affidavit, (Docket No. 50-2 ("Pl.'s Aff.")). At her deposition, Plaintiff testified that, while Defendant was placing sutures after extracting her tooth, she experienced a sharp pain that caused her to jump. (Pl.'s Depo. Tr. at 78:18–79:5). She further testified that she has experienced numbness in her lower left lip since the extraction. (Pl.'s Depo. Tr. at 90:3–19).

The record also includes a transcript of Defendant's deposition testimony, (Docket Nos. 42-4, 42-5, 42-6, 42-7 (collectively, "Def.'s Depo. Tr.")), as well as Defendant's sworn affidavit, (Docket No. 42 at 12–14 ("Def.'s Aff.")). At his deposition, Defendant testified that he did not have a specific recollection of the procedure that he performed on Plaintiff. (Def.'s Depo. Tr. at 62:2–62:11, 68:22–69:4). Defendant also testified that his handwritten notes regarding the procedure state as follows:

> 46-year-old female presents for extraction 19. Past medical history's not contributory. Allergies, to penicillin and sulfa, written and verbal consents. Two percent lidocaine, with one to 100,000 epi times two . . . carpules. Extraction number 19. Procedure went well. No complications.

(Def.'s Depo. Tr. at 55:13–56:10; *see also* Docket No. 42-3 at 10). Defendant acknowledged that his notes do not spell out in detail the surgical technique that he used during the extraction.

(Def.'s Depo. Tr. at 67:16–22).  Defendant testified about how he normally performs similar extractions in patients like Plaintiff. (Def.'s Depo. Tr. at 62:8–11, 69:5–14, 71:16–87:11).

In his affidavit, Defendant described in detail the procedure that he performed on Plaintiff. (Def.'s Aff. ¶¶ 6–10).  The affidavit states, in pertinent part, as follows:

> A crestal incision was made above plaintiff's tooth remnants extending into sulcular incisions around the neighboring teeth. A 2mm vertical releasing incision was made at each end of the initial incision, far removed from any nerves and the mental foramen. . . . With good visualization provided by the flap design plaintiff's tooth #19 was easily accessible. As important, I confirmed that the mental nerve and mental foramen were not in the surgical field. . . . The tooth was removed . . . . A single suture to re-approximate the flap at the side of the crestal incision (on top of the gum) was then placed.

(Def.'s Aff. ¶¶ 6–10).

**B. Dr. Ira Stier**

The record before the Court also includes a transcript of the deposition testimony of Dr. Ira Stier, (Docket Nos. 42-13 ("Stier Depo. Tr.")), as well as his sworn affidavit, (Docket No. 51 ("Stier Aff.")), his expert report dated June 7, 2015, (Docket No. 42-11 at 2–4), his supplemental report dated November 7, 2015, (Docket No. 42-11 at 5), and his supplemental report dated November 27, 2016, (Docket No. 42-11 at 6).  Dr. Stier obtained his dental degree in 1988 and is duly licensed to practice dentistry in the State of New York. (Stier Aff. ¶¶ 1, 3).  He is a member of the American Dental Association, the American Academy of Implant Dentistry and the American Academy of Facial Esthetics. (Stier Aff. ¶ 6).  He performs "all aspects of dentistry with a strong emphasis on advanced oral surgery." (Stier Aff. ¶ 5).

On March 21, 2015, Plaintiff saw Dr. Stier for the first time. (Def.'s 56.1 Statement ¶ 17; Pl.'s 56.1 Response ¶ 17).  Dr. Stier placed an implant at the site of tooth number 19, placed resin/posts to teeth numbers 12–14 and 18–21, and extracted tooth number 17. (Def.'s 56.1

3

Statement ¶ 17; Pl.'s 56.1 Response ¶ 17). Dr. Stier's affidavit states that, upon his examination of Plaintiff on March 21, 2015, she had "complete paresthesia extra-orally in a square from the left commissure to the midline of the lower lip inferiorly to the border of the mandible, extending intraorally to the mucosa . . . in the same region and the facial gingiva . . . from the midline distally to a point just distal of the #19 tooth location." (Stier Aff. ¶ 9). Plaintiff also had "a horizontal scar at the apex of #20 extending to the mesial region of where the apex of #19 would have been," as well as "scars showing suturing had taken place in the same locale which is congruent with the location of the Mental Foramen." (Stier Aff. ¶ 9).

In his original expert report, Dr. Stier characterized Defendant's procedure notes as "extremely limited and vague," and opined that Defendant's documentation was "sub-standard." (Docket No. 42-11 at 2–3). Dr. Stier also opined that Plaintiff's paresthesia was caused "by the use of a sub-standard surgical protocol." (Docket No. 42-11 at 3). In his supplemental report dated November 7, 2015, Dr. Stier elaborated that "[s]tandard practice requires use of caution when performing any procedure in [the area of the mental foramen] and to avoid placing a suture there because of the risk of injury to the Mental nerve." (Docket No. 42-11 at 5). Dr. Stier opined that Defendant "deviated from the accepted standard of care when he placed a suture directly over the Mental Foramen where it exits the Mandible." (Docket No. 42-11 at 5).

In his affidavit, Dr. Stier opined that, based upon his professional training and experience, one cannot properly close two sulcular and vertical incisions and one crestal incision with only one suture—as Defendant claims he did with Plaintiff. (Stier Aff. ¶ 27). Dr. Stier further opined that there were two possible explanations for Plaintiff's nerve damage: either Defendant cut an accessory nerve fiber when making an incision, or he hit an accessory nerve fiber when suturing the incision. (Stier Aff. ¶ 37). According to Dr. Stier, "either would

4

constitute an unacceptable surgical procedure that deviated from accepted standards of dental practice." (Stier Aff. ¶ 50).

**C. Dr. Sol Mora**

The record before the Court also includes a transcript of the deposition testimony of Dr. Sol Mora, (Docket Nos. 42-10 ("Mora Depo. Tr.")), as well as records from Dr. Mora's treatment of Plaintiff, (Docket No. 42-9). Dr. Mora is a board-certified neurologist. (Def.'s 56.1 Statement ¶ 14; Pl.'s 56.1 Response ¶ 14). Plaintiff first came under Dr. Mora's care on November 4, 2013—more than a year before the procedure at issue. (Mora Depo. Tr. at 10:22–11:6; *see also* Docket No. 42-9 at 12). Dr. Mora treated Plaintiff for attention-deficit disorder ("ADD"). (Mora Depo. Tr. at 17:18–21, 42:21–43:19).

On August 28, 2014, about four months after the procedure at issue, Plaintiff attended an appointment with Dr. Mora. (Def.'s 56.1 Statement ¶ 14; Pl.'s 56.1 Response ¶ 14). At the appointment, Plaintiff denied paresthesia and made no complaint of facial or oral numbness. (Def.'s 56.1 Statement ¶ 14; Pl.'s 56.1 Response ¶ 14; *see also* Docket No. 42-9 at 49–53). Dr. Mora tested Plaintiff's fifth cranial nerve (the trigeminal nerve) and found it to be intact. (Mora Depo. Tr. at 49:10–19; Docket No. 42-9 at 51). Dr. Mora testified that the trigeminal nerve leads into nerves that go down into the lower jaw, including the mental nerve. (Mora Depo. Tr. at 33:11–34:8). He testified, however, that it was "unlikely" that he specifically tested the mental nerve to see if the sensation along its distribution was intact. (Mora Depo. Tr. at 50:5–16). Plaintiff first complained to Dr. Mora about persistent numbness of the left lower lip at an appointment on December 16, 2014. (Def.'s 56.1 Statement ¶ 15; Pl.'s 56.1 Response ¶ 15; *see also* Docket No. 42-9 at 54).

### D. Dr. Harry Dym

The record also includes the sworn affidavit of Dr. Harry Dym, (Docket No. 42 at 15–21 ("Dym Aff.")), as well as his expert report, (Docket Nos. 42-15 ("Dym Report")), and his report on his independent medical examination of Plaintiff, (Docket No. 42-14 ("Dym Exam Report")). Dr. Dym is a dentist licensed by the State of New York and a board-certified oral and maxillofacial surgeon. (Dym Report at 1). In his expert report, Dr. Dym opined that Defendant did not deviate from the accepted dental standard of care in his extraction of Plaintiff's tooth number 19 and that Plaintiff did not sustain an injury to her left mental nerve. (Dym Report at 7).

## II. LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of demonstrating that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).[4] The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583(LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012).

---

[4] Although Plaintiff's substantive claim is governed under New York law, "the procedural issues are determined under the federal standard." *Tarqui v. United States*, No. 14-CV-3523 (KMK), 2017 WL 4326542, at *5 (S.D.N.Y. Sept. 27, 2017) (quoting *Hughes v. United States*, No. 12 Civ. 5109(CM), 2014 WL 929837, at *4 (S.D.N.Y. Mar. 7, 2014)).

6

In reviewing a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150–51 (2000). That said, the Court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). If the moving party meets this initial burden, the burden then shifts to the non-moving party to "present evidence sufficient to satisfy every element of the claim." *Id.* "The non-moving party 'is required to go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial,'" *id.* (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 249–50), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-moving party fails to establish the existence of an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**B. Dental Malpractice**

In order to establish a claim for dental practice under New York law, a plaintiff must prove (1) a deviation or departure from accepted standards of dental practice, (2) and that such departure was a proximate cause of the plaintiff's injuries. *See Dyckes v. Stabile*, 61 N.Y.S.3d 110, 112 (2d Dep't 2017); *Czereszko v. Procopio*, 53 N.Y.S.3d 770, 772 (4th Dep't 2017); *Menard v. Feinberg*, 875 N.Y.S.2d 309, 311 (3d Dep't 2009); *Erdogan v. Toothsavers Dental Servs., P.C.*, 869 N.Y.S.2d 82, 83 (1st Dep't 2008).

7

## III. DISCUSSION

### A. Defendant's Deficient Rule 56.1 Statement

As an initial matter, the Court must address Defendant's failure to comply with the requirements of Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") and Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1").

Rule 56 requires a party asserting that a fact is undisputed to support the assertion by "citing to *particular parts* of materials in the record." Rule 56(c)(1)(A) (emphasis added). Additionally, in the Southern District of New York, a party moving for summary judgment must submit a short and concise statement of the material facts as to which the party contends there is no genuine issue to be tried. Local Rule 56.1(a). Each statement by the movant "must be followed by citation to evidence that would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Rule 56.1(d). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

With his motion, Defendant submitted a Local Rule 56.1 statement that contained numerous paragraphs without any citation whatsoever. (*See* Docket No. 42 at 3–8). After Plaintiff rightfully objected to Defendant's failure to comply with Local Rule 56.1, (*see* Docket No. 43), Defendant submitted a letter response arguing that the objection of Plaintiff's attorney was "frivolous" and "disingenuous," that Defendant's Local Rule 56.1 statement was "not defective," and that "a complete review of Dr. Sunwoo's motion papers clearly reveals all of the supporting admissible evidence to demonstrate the appropriateness of now dismissing the Complaint," (Docket No. 44 at 1). To his letter response, Defendant attached a slightly-revised

8

Local Rule 56.1 statement, which continued to lack proper citations to *particular parts* of materials in the record following each statement of fact, (*see* Docket No. 44 at 3–8).

Defendant's refusal to include proper citations for many assertions in his Local Rule 56.1 statement has wasted the time of both opposing counsel and the Court. The Court was "free to disregard" the deficient paragraphs in Defendant's Local Rule 56.1 statement. *Collins v. Travers Fine Jewels Inc.*, No. 16-CV-03780 (SN), 2018 WL 1470590, at *1 (S.D.N.Y. Mar. 23, 2018) (quoting *Holtz*, 258 F.3d at 73–74); *see also Cruz v. Wyckoff Heights Med. Ctr.*, No. 13 Civ. 8355 (ER), 2016 WL 4533568, at *2 (S.D.N.Y. July 19, 2016) (declining to consider paragraphs from Local Rule 56.1 statement that were not supported by citations to evidence in the record). Instead, however, the Court elected to consider Defendant's Local Rule 56.1 statement and to conduct an assiduous review of the record. *See Holtz*, 258 F.3d at 73 (holding that a court has discretion to conduct an assiduous review of the record even where one of the parties has failed to file a Local Rule 56.1 statement); Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Having done so, the Court finds, as set forth below, that Defendant has failed to show that he is entitled to judgment as a matter of law.

## B. Existence of Triable Issues of Fact

Defense counsel's legal analysis in support of Defendant's motion for summary judgment is unusually terse. For ease of reference, the Court reproduces below the entirety of Defendant's legal analysis in his memorandum of law, which follows a several-page recitation of legal standards:

> Since Dr. Stier's opinions as to an alleged deviation from the standard of care are not based on facts established by evidence, but surmise and conjecture, they should be rejected and DR. SUNWOO's motion granted. Moreover, in the absence of any

9

> objective medical/dental proof that is contrary to Dr. Mora's finding of normal facial sensation over 4 months after the subject extraction or that it is anatomically possible for plaintiff's current complaints to result from an alleged injury to a branch of her mental nerve or have arisen 8 months after the subject extraction, as opined by Dr. Dym, it is clear that plaintiff is unable to prove that anything DR. SUNWOO did or failed to do caused any injury to her, providing a second basis for the dismissal of the Complaint.

(Docket No. 42-18 at 6). Defendant's reply memorandum of law repeats the same language almost verbatim. (Docket No. 53 at 4).[5]

Essentially, Defendant advances two main arguments. First, Defendant argues that Plaintiff cannot establish that Defendant departed from accepted dental practices because the expert opinions of Plaintiff's treating dentist, Dr. Stier, are deficient. Second, Defendant argues that Plaintiff cannot establish that Defendant's actions proximately caused Plaintiff's alleged injuries because (i) Dr. Mora found normal facial sensation over four months after the subject extraction, (ii) it is anatomically impossible for Plaintiff's complaints to result from an injury to a branch of her mental nerve, and (iii) it is anatomically impossible for Plaintiff's alleged injury to have arisen eight months after the procedure at issue. The Court addresses Defendants' arguments in turn below.

**1. Departure from Accepted Dental Standards**

Generally, under New York law, "[i]t is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of malpractice." *Tarqui*, 2017 WL 4326542, at *4 (quoting *Sitts v. United States*, 811 F.2d 736, 739 (2d Cir. 1987)). The

---

[5] In the affirmations of his attorney, Defendant asserted additional legal arguments, which were not included in Defendant's memoranda of law. (*Compare* Docket No. 42 at 9–11, *and* Docket No. 52, *with* Docket No. 42-18, *and* Docket No. 53). Pursuant to Local Civil Rule 7.1, Defendant's motion papers were required to include a "memorandum of law . . . divided, under appropriate headings, into as many parts as there are issues to be determined," as well as "affidavits and exhibits thereto containing any *factual* information . . . necessary for the decision of the motion." Local Civ. R. 7.1(a) (emphasis added). Nevertheless, the Court has also considered the legal arguments in defense counsel's affirmations and, as set forth below, finds them unpersuasive.

admissibility of expert testimony in federal courts is governed principally by Rule 702 of the Federal Rules of Evidence, which reads as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The party seeking to introduce and rely on expert testimony bears the burden of establishing that the proposed expert and his testimony meet the requirements of Rule 702 by a preponderance of the evidence. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 n.10 (1993).

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions, representing a departure from the previously widely followed, and more restrictive, standard of *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923)." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d. Cir. 2005) (citing *Daubert*, 509 U.S. at 588). Nonetheless, in determining whether expert testimony is admissible, the Court must assume a gatekeeper function to determine whether "the expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. A trial court "has broad discretion to carry out this gatekeeping function." *In re Pfizer Inc. Securities Litigation*, 819 F.3d 642, 658 (2d Cir. 2016).

### i. Qualifications

"Courts within the Second Circuit have liberally construed expert qualification requirements when determining if a witness can be considered an expert." *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936(KMW), 2011 WL 1674796, at *2 (S.D.N.Y. May 2, 2011) (internal quotation marks omitted) (quoting *Cary Oil Co. v. MG Ref. & Mktg., Inc.*, No. 99 Civ. 1725(VM), 2003 WL 1878246, at *1 (S.D.N.Y. Apr. 11, 2003)); *see also United States v. Brown*, 776 F.2d 397, 400 (2d Cir. 1985) (qualification requirements of Rule 702 "must be read in light of the liberalizing purpose of the rule"). "If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *Arista*, 2011 WL 1674796, at *3 (quoting *In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007)); *see also McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) (rejecting the argument that the expert "had to be a specialist in environmental medicine to provide expert testimony" regarding an injury allegedly caused by glue fumes as "an unwarranted expansion of the gatekeeper role announced in *Daubert*").

Dr. Stier is a licensed and trained dentist with decades of professional experience. (Stier Aff. ¶¶ 1, 3). He performs "all aspects of dentistry with a strong emphasis on advanced oral surgery." (Stier Aff. ¶ 5). He has taken continuing education classes, many of which included live surgical cases. (Stier Depo. Tr. at 18:5–9). He testified that he is familiar with the standard of care in New York with respect to the extraction of a tooth like number 19. (Stier Depo. Tr. at 19:21–20:13). He further testified that has extracted tooth number 19 thousands of times in his years of practice. (Stier Depo. Tr. at 36:23–25). He is also Plaintiff's treating dentist. As such, the Court finds that Dr. Stier is qualified to opine on the standard of care for the extraction of Plaintiff's tooth and the cause of Plaintiff's alleged numbness.

In his affirmation, Defendant's attorney refers to Dr. Stier's "obvious lack of qualifications to offer any testimony against an Oral and Maxillofacial Surgeon and Medical Doctor." (Docket No. 42 at 9). However, the strength of Dr. Stier's credentials relative to those of the Defendant does not control whether Dr. Stier is qualified to provide expert opinion testimony. *See McCullock*, 61 F.3d at 1044 ("Disputes as to the strength of his credentials . . . go to the weight, not the admissibility, of his testimony.").

### ii. Reliability

Dr. Stier's opinions are supported by, among other things, his examination and treatment of Plaintiff and his review of Defendant's treatment records. (*See, e.g.*, Docket No. 42-11 at 2). Defendant suggests that Dr. Stier's opinions are unreliable because Dr. Stier "came to his conclusion based on assumptions, not knowing the details of how Dr. Sunwoo performed the procedure." (Docket No. 42 at 10; *see also* Docket No. 52 at 3). However, Dr. Stier's incomplete knowledge was due, in part, to Defendant's limited procedure notes, which Dr. Stier described as vague and sub-standard, as well as Defendant's deposition testimony that he did not specifically recall the procedure he performed on Plaintiff. (*See* Docket No. 42-11 at 2; Def.'s Depo. Tr. at 62:2–62:11, 68:22–69:4). Moreover, whether Defendant actually performed the procedure in the manner that his affidavit describes is a factual issue for the jury decide.

Defendant also suggests that Dr. Stier's opinions are unreliable because Dr. Stier reached his opinions without reviewing Dr. Mora's chart entry of August 27, 2014, which indicates that Plaintiff did not complain of numbness at that appointment. (Docket No. 42 at 10). Defense counsel can cross-examine Dr. Stier about this issue; however, it does not render Dr. Stier's opinions inadmissible, as he was permitted to believe the complaints of his patient that she had experienced numbness since the extraction at issue.

13

Defendant further argues that Dr. Stier failed to rule out other potential causes of paresthesia, such as Plaintiff's vitamin B-12 deficiency, Chiari malformation and use of Ritalin. (Docket No. 42 at 10). However, Dr. Mora testified that he did not believe Plaintiff's history of vitamin B-12 deficiency, her Chiari malformation or her ADD medication contributed to the numbness in her lower lip. (Mora Depo. Tr. at 21:3–25:14, 44:7–23, 62:14–63:10). Furthermore, Dr. Stier did rule out other potential causes of Plaintiff's symptoms. (*See, e.g.*, Stier Aff. ¶¶ 39 (post-extraction infection), 40 (post-extraction inflammation), 43 (Lyme disease), 44 (prior trauma)).

Defendant also objects that Dr. Stier "failed to offer a single opinion based on any certainty." (Docket No. 52 ¶ 7). Even if Dr. Stier did not use the specific word "certainty" when offering his opinions, the Court finds that, substantively, Dr. Stier's opinions convey sufficient certainty to satisfy the reliability requirements of Rule 702. *Cf. Tarqui*, 2017 WL 4326542, at *10 ("[N]o expert could definitively conclude what would have happened under an alternative set of facts. In this sense, all opinions with regard to proximate cause are speculative.").

### iii. Timeliness

In his original expert reports, Dr. Stier opined that Defendant was negligent "when he placed a suture directly over the Mental Foramen." (Docket No. 42-11). At his deposition, Dr. Stier was shown a diagram, which Defendant had drawn upon at Defendant's deposition. (Stier Depo. Tr. at 31:12–32:23). After looking at the diagram, Dr. Stier opined that Defendant "may have incised one or two of those accessory fibers coming off of [the mental] nerve." (Stier Depo. Tr. at 33:6–21). In his affidavit, Dr. Stier explained that there are "two possible explanations for Ms. Carrasco's nerve damage . . . . [E]ither Dr. Sunwoo cut one of the accessory fibers coming off the Mental nerve when he made his sulcular and vertical releasing incision above the Mental

Foramen, or when suturing that sulcular and vertical releasing incision, Dr. Sunwoo hit the accessory nerve fibers of the Mental Nerve, resulting in paresthesia." (Stier Aff. ¶ 37).

Citing Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, Defendant argues that Dr. Stier's multiple theories of liability should be disregarded because "they are based on assumptions and go well beyond the details of his expert report(s)." (Docket No. 53 at 3). The Court disagrees for two reasons.

First, by its own terms, Rule 26(a)(2)(B) applies "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. Proc. 26(a)(2)(B). Treatment providers, such as Dr. Stier, are generally subject to the less rigorous requirements of Rule 26(a)(2)(C), which requires only "*a summary* of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. Proc. 26(a)(2)(C) (emphasis added); *see also Caserto v. Metro-N. R.R. Co.*, No. 14-CV-7936 (JMF), 2016 WL 406390, at *1 (S.D.N.Y. Feb. 2, 2016) ("[T]o the extent that Defendant objects to the nature and extent of [the proffered expert's] disclosures, the objections are misplaced as the disclosures plainly pass muster under the less rigorous standards that apply to treating physicians."); *Green v. McAllister Bros.*, No. 02 Civ. 7588(FM), 2005 WL 742624, at *10 (S.D.N.Y. Mar. 25, 2005) ("The fact that [the proffered expert] is [the plaintiff's] treating physician exempts him from the usual Rule 26(a)(2) requirement that an expert prepare a detailed report before furnishing opinion testimony at a trial.").

Second, Dr. Stier's deposition testimony and affidavit do not "expound a wholly new and complex" approach; rather, they elaborate upon and refine his initial position in light of previously-unknown information. *See Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 279 (S.D.N.Y. 2011) (allowing expert declaration that did not expound

a wholly new and complex approach, but rather supported the expert's initial position). "[T]o the extent that an expert affidavit is within the scope of the initial expert report, it is properly submitted in conjunction with dispositive motions even outside the time frame for expert discovery." *Id.* (citing *Lidle ex rel. Lidle v. Cirrus Design Corp.*, No. 08 Cv. 1253(BSJ)(HBP), 2010 WL 2674584, at *7 n.4 (S.D.N.Y. July 6, 2010)); *accord Emig v. Electrolux Home Products Inc.*, No. 06-CV-4791 (KMK), 2008 WL 4200988, at *3 n.3 (S.D.N.Y. Sept. 11, 2008) (allowing expert affidavit that "offers more information and elaboration on opinions previously expressed" in expert report). To the extent that the opinions expressed by Dr. Stier at his deposition and in his affidavit fall outside the scope of his prior reports, the Court finds that preclusion is not appropriate in light of the reasons for the delay, the importance of the evidence, the lack of unfair prejudice to Defendant, and the stage of the proceedings. *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (articulating factors).

The submissions of Plaintiff's expert, Dr. Stier, raise sufficient issues of fact related to whether Defendant deviated from the applicable standard of care to preclude summary judgment. *See Rivera v. Anilesh*, 8 N.Y.3d 627, 636 (2007) (holding that "a jury must determine whether [the defendant dentist] committed malpractice" where the plaintiff's testimony and her expert's opinion raised factual issues); *Del Bene v. Frank C. Perry, DDS, P.C.*, 921 N.Y.S.2d 150, 151 (2d Dep't 2011) (holding that "the plaintiff's expert affirmation raised a triable issue of fact with respect to the cause of action alleging negligent dental treatment").

## 2. Proximate Causation of Plaintiff's Injuries

Defendant advances various arguments that purportedly undermine Plaintiff's theory of causation and damages. However, Defendant confuses the inquiry at trial with the summary judgment standard. *See Tarqui*, 2017 WL 4326542, at *7 ("[T]he issue of whether a doctor's

negligence is more likely than not a proximate cause of a plaintiff's injury is usually for the jury to decide." (quoting *Polanco v. Reed*, 963 N.Y.S.2d 57, 58 (1st Dep't 2013)).

Defendant highlights that Dr. Mora found nothing wrong neurologically during his August 28, 2014 examination of Plaintiff. However, Dr. Mora testified that it was "unlikely" that he specifically tested the mental nerve to see if the sensation along its distribution was intact. (Mora Depo. Tr. at 50:5–16). Furthermore, the fact that Plaintiff did not mention numbness to Dr. Mora at her first visit with him after the extraction is a point that goes to Plaintiff's credibility, which is not for the Court to assess on summary judgment. Plaintiff testified that she saw Dr. Mora regularly for her ADD and that she did not consider her treatment by Dr. Mora to be connected to "dental things." (Pl.'s Depo. Tr. at 97:16–24, 102:4–15). It is for the jury to decide whether to believe Plaintiff's explanation.[6]

Based on the opinion of Dr. Dym, Defendant also argues that it is anatomically impossible for Plaintiff's complaints to result from an injury to a branch of her mental nerve. However, Plaintiff's affidavit states that Dr. Dym mischaracterized Plaintiff's symptoms, and that she has full sensation in her tongue and in the floor of her mouth. (Pl.'s Aff. ¶ 5). Moreover, Dr. Stier's affidavit states that areas of paresthesia he has described are all innervated by the mental nerve. (Stier Aff. ¶¶ 47–49). "Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions. Such conflicting expert opinions will raise credibility issues which can only be resolved by a jury." *Tarqui*, 2017 WL 4326542, at *7 (quoting *DiGeronimo v. Fuchs*, 957 N.Y.S.2d 167, 171 (2d Dep't 2012)).

---

[6] After Defendant's motion for summary judgment was fully-submitted, Defendant submitted records from three additional treating physicians. (Docket No. 54). According to Defendant, these additional records also indicate that Plaintiff had normal facial sensation after the procedure at issue. (*Id.*). Like Dr. Mora's records, these additional records may be relevant to Plaintiff's credibility, but they do not entitle Defendant to judgment as a matter of law.

Finally, Defendant argues that it is anatomically impossible for Plaintiff's alleged injury to have arisen eight months after the procedure at issue. However, this point is immaterial for purposes of deciding Defendant's summary judgment motion because Plaintiff testified that she experienced numbness since the procedure at issue. (Pl.'s Depo. Tr. at 90:3–19). As such, Plaintiff has raised triable issues of fact as to whether any departure from the standard of care by Defendant proximately caused Plaintiff's alleged injuries.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied. A pre-trial conference is scheduled for September 20, 2018 at 11:30 a.m. in Courtroom 421, 300 Quarropas Street, White Plains, New York 10601 before Magistrate Judge Judith C. McCarthy. Counsel should be prepared to discuss trial dates at the conference. The Clerk is respectfully requested to terminate the pending motion, (Docket Nos. 42).

Dated: August 20, 2018
       White Plains, New York

SO ORDERED:

_____
JUDITH C. McCARTHY
United States Magistrate Judge